Julia Campins – CA State Bar No. 238023
Hillary Benham-Baker – CA State Bar No. 265019
CAMPINS BENHAM-BAKER
935 Moraga Road, Suite 200
Lafayette, CA 94549
Tel. (415) 373-5333
Fax (415) 373-5334
julia@campinsbenhambaker.com
hillary@campinsbenhambaker.com

*Attorneys for Plaintiff Lisanne Wirth*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LISANNE WIRTH,                                )       Case No.:  17-1147
                                             )
                    Plaintiff,                )
                                             )
vs.                                           )       **COMPLAINT**
                                             )
TEACH FOR AMERICA, INC.,                      )       **JURY TRIAL DEMANDED**
                                             )
                    Defendant.                )
                                             )
                                             )
_____              )

LISANNE WIRTH, brings this action to recover damages and civil penalties from Defendant Teach for America for violations of the California Fair Employment and Housing Act, California Government Code sections 12940 *et seq.*, California Labor Code section 1102.5, and for wrongful termination in violation of public policy.

## I.    INTRODUCTION

1.    Our state and federal governments have passed laws protecting disabled individuals from discrimination.  Given that so much business is transacted on the internet,

*Wirth v. Teach for America, Inc.*                         COMPLAINT - 1

websites should be equally accessible to disabled and non-disabled individuals alike, whether they are searching for jobs or resources.

2. Lisanne Wirth, while an employee of Teach for America, Inc., discovered that the company's website was grossly inaccessible, and she repeatedly informed her supervisors and Teach for America executives of the inaccessibility of the website, as well as the liability that Teach for America risked by doing nothing.

3. In return for her concerns, Ms. Wirth was terminated.

## II.   JURISDICTION AND VENUE

4. This action arises under the California Fair Employment and Housing Act, California Government Code sections 12940 *et seq.*, California Labor Code section 1102.5, and public policy.

5. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.  As alleged below, Plaintiff's lost wages, emotional distress, and attorneys' fees exceed $75,000.  Plaintiff is a citizen of California.  On information and belief, Teach for America is a citizen of Connecticut.

6. Venue in the Eastern District of California is proper under California Government Code § 12965(b), because the workplace in which the unlawful practices were committed is located in Sacramento County.

7. Ms. Wirth has complied with all conditions precedent to bringing this action.

8. Ms. Wirth has exhausted any necessary administrative procedures for pursuing her claims.

## III.   PARTIES

9. Plaintiff Lisanne Wirth was, at all times relevant to this Complaint, a resident of Folsom, in Sacramento County.  Ms. Wirth is a content strategist and user experience (UX) analyst.  She began working at Teach for America, Inc. in November 2014.

*Wirth v. Teach for America, Inc.*                    COMPLAINT - 2

10. Defendant Teach for America, Inc. is a non-profit corporation which, inter alia, provides teachers to classrooms throughout the country. On information and belief, Teach for America is a non-profit corporation registered in Connecticut.

### IV. FACTUAL ALLEGATIONS

11. Lisanne Wirth came to Teach for America (TFA) in November 2014 as the Director of Content Strategy. She came from a major telecommunications company, where she had worked for 16 years, achieving the title of Associate Director and acquiring expertise in content strategy, accessibility, user experience (UX) analysis and research, search engine optimization (SEO) and marketing. She has been certified by multiple entities on user experience (UX), including Human Factors International. Over her years at her previous job she gradually built an 18-person team, developing the skills necessary to do each job and then subsequently manage individuals to perform those jobs.

12. Ms. Wirth worked from home, as did other members of her team spread throughout the country.

13. Despite taking a significant pay cut, she was excited by the TFA mission, seeking work with a nonprofit to make a positive difference in the world, and the challenge of working on a new content management system.

14. Ms. Wirth worked hard in her job, often working grueling 12-15-hour days during the website redesign launch, and 10-hour days otherwise. She initially reported to Elena Rover, Managing Editor. Ms. Rover thought highly of Ms. Wirth's work, but unfortunately Ms. Rover was forced out of her job in September 2015.

15. Before her departure from TFA, Ms. Rover (along with Lauren Sanders) gave Ms. Wirth an excellent performance review. During her time at TFA, Ms. Wirth received laudatory feedback from many other people as well.

16. Ms. Wirth's job included search-engine optimization (SEO). This entailed ensuring that when interested job candidates searched for Teach for America, they would find Teach for America's website, and not negative content regarding Teach for America.

17.     Because of this task, she had to analyze all parts of the TFA website. In August 2015, she began to notice some problems with accessibility of the website for users (particularly job applicants) with disabilities. She was particularly concerned about this accessibility given that she had just found out about the U.S. government's statements of interest filed in cases against Harvard and MIT regarding inaccessible web content. Ms. Wirth was aware that significant funding comes from government grants and TFA has active detractors who could use the info to cause severe public relations damage, leading to the loss of corporate and private donors.

18.     Ms. Wirth believed that the inaccessibility of the website would both adversely affect the ability for job applicants with disabilities to apply for jobs and prevent taxpayers with disabilities or who had children with disabilities in K-12 from seeing where their money was being spent.

19.     The problems Ms. Wirth noted included highly inaccurate video captioning. For example, in one video, the audio stated ". . . who may come from all kinds of personal backgrounds and personal appearances." Unfortunately, the video was captioned, "you make me cum on taxes personal backgrounds professed."

20.     The problems Ms. Wirth noted also included improper visual image tagging, unreadability for screen readers, and lack of any meaningful effort to make the website readable for individuals with cognitive disabilities. For example, the website lacked proper semantic markup, which meant that even if the content were readable by screen readers, the structure of the website and the information architecture would make no sense whatsoever to those readers because header tags were, and on information and belief still are, being used for decorative text formatting, not to denote page hierarchies as required.

21.     Ms. Wirth sent an email to Lauren Sanders, Senior Managing Director, listing the laws applicable to websites. Ms. Sanders's response led Ms. Wirth to believe that TFA was taking this issue seriously. Nevertheless, Ms. Sanders did not ask Ms. Wirth to take meaningful actions to facilitate remediating the website accessibility issues.

*Wirth v. Teach for America, Inc.*                              COMPLAINT - 4

22.     In October 2015, Ms. Wirth approached Ms. Sanders with concerns about disparate treatment she observed toward the Chief Diversity Officer, an African-American woman.  As background, Ms. Wirth participated in TFA's required team discussions about articles on the topics of diversity and inclusiveness, the CDO C-suite position had been created in 2014 and she was in Ms. Wirth's new hire orientation, and one of TFA's core values is diversity.  Ms. Wirth relayed that she had heard the CDO labeled as a "diva" and a "bear," which Ms. Wirth believed constituted coded discriminatory language.  She also was concerned that, despite the mandate to weave a diversity message throughout the website using the announcement of the CDO's position as a starting point, it appeared that no one wanted to write or promote this article.  In contrast, an article about white male colleagues received substantial attention.  Ms. Sanders responded to Ms. Wirth's concerns by stating that the CDO *was* a diva and asking why Ms. Wirth was bringing those concerns to her.

23.     Subsequently, a member of the Content Team told Ms. Wirth that the reason she was encountering resistance on giving the CDO a longer piece in a "Top Stories" blog was because it was known to the Content Team (via the current Marketing Vice President Stacey Jaffe) that articles about black teachers "don't perform well on social media."

24.     Ms. Wirth brought the issue up again.  When Ms. Sanders was again dismissive of Ms. Wirth's concerns, Ms. Wirth asked Ms. Sanders to bring this issue to her supervisor, Melanie Hoffert, Vice President of Marketing.  She did so on October 27.  Later that day, Ms. Hoffert told Ms. Wirth that there was a reorganization, and Ms. Wirth and one other individual were "not a good fit" and would be transferred to Dominique Remy's team, even though Mr. Remy's team's focus was IT development, and Ms. Sanders's was Content and Engagement. These were very different mandates and skill sets.

25.     Dominique Remy, Ms. Wirth's supervisor after October 2015, and Ms. Sanders both responded to her concerns about accessibility with concerns about the "return on investment" if they were to invest in accessibility.  In other words, they appeared to view the issue as important *only* if a critical mass of disabled applicants would subsequently wish to work

for TFA.  Mr. Remy also noted that he was aware of this issue before TFA's large redesign that had launched in April, but that TFA leadership was not interested in accessibility, he never brought it up.

26.    On November 2, Ms. Wirth gave a presentation to Grant Besser, Chief Marketing Officer, Melanie Hoffert, and Christina Lorenzo Fier, the Senior Managing Director of the Project Management Group, regarding accessibility.  She flagged that the TFA website was not searchable, that a screen reader would not be able to navigate it, that the untitled pages presented a problem, and that videos were not properly captioned.  This would mean that a disabled person who wanted to be a teacher or get a staff job with TFA could not use the site, nor could the communities where TFA operated, including disabled parents of students.  The reaction she received from Mr. Besser was that this was not a problem for TFA, and that TFA simply had to *say* it was working on accessibility.

27.    At no point after this meeting was Ms. Wirth asked to take any steps to remediate the inaccessibility of the TFA website.

28.    After expressing these concerns repeatedly, and specifically identifying concerns as new inaccessible content was added, Ms. Wirth began to be hyper-scrutinized.  Mr. Remy would invent concerns about Ms. Wirth, but not bring them to her through any of the proper channels.  By way of example, contrary to her supervision from Ms. Sanders, Mr. Remy required Ms. Wirth to put any time away *from her desk* on the Development Team calendar.  He instructed her not to communicate directly with stakeholders anymore, and to list every task she performed during the day in daily meetings, even if they did not impact her team.  Ms. Wirth believes TFA was trying to force her to resign.

29.    On January 13, 2016, Ms. Wirth presented her concerns in an email to Mr. Remy and Ms. Hoffert.  She identified her grave concern over the severe liability that TFA was risking.  She also flagged that she felt that she had been experiencing retaliation for raising these concerns as well as the discrimination issues with respect to the Chief Diversity Officer she had previously raised.

*Wirth v. Teach for America, Inc.*                    COMPLAINT - 6

30.    One week later, on January 20, TFA terminated Ms. Wirth.  In an email, Mr. Remy stated that she was terminated for "insubordination."  Ms. Wirth had never received any discipline during her time at TFA.  In fact, she had been repeatedly informed that TFA wanted its employees to raise "culture" problems as the organization was working to address culture, morale, and turnover issues.

31.    To date, TFA has still not remedied the majority of the access problems.  There is no promise that it will conform to WCAG 2.0 Level AA to bring the site into compliance for all web content (existing and new).

32.    On information and belief, the real reason for Ms. Wirth's termination was to retaliate against her for reporting and continuing to report TFA's noncompliance with accessibility laws.

33.    On January 18, 2017, Plaintiff filed a complaint for discrimination and retaliation with the California Department of Fair Employment and Housing (DFEH).  Plaintiff received a Notice of Right to Sue from the DFEH dated September 29, 2017.  Exhibit A.

### First Cause of Action

**[Retaliation in Violation of FEHA, Gov't Code § 12940 et seq.]**

34.    Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

35.    Defendant was Plaintiff's employer as defined by California Government Code section 12926(d).

36.    The FEHA states that employers may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part. Cal. Gov't Code § 12940(h).

37.    Plaintiff engaged in protected activity when she complained to Defendant's managers regarding discrimination.

38.    Defendant subjected Plaintiff to adverse employment actions when it terminated Plaintiff shortly after she engaged in this protected activity.

39.    Defendant's actions after Plaintiff's complaints were in retaliation for asserting her legal rights.

40.    Plaintiff's complaints were the substantial motivating reasons for Defendant's decisions to terminate Plaintiff, in violation of FEHA.

41.    Plaintiff filed a timely charge against Defendant with the DFEH alleging, *inter alia*, retaliation.  Thereafter, Plaintiff received from the DFEH notification of her right to sue. Exhibit A.

42.    Defendant's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

43.    As a result of Defendant's actions, Plaintiff sustained economic damages to be proven at trial, as well as punitive damages.  As a further result of Defendant's actions, Plaintiff suffered emotional distress; resulting in damages to be proven at trial.

44.    Plaintiff is entitled to all attorneys' fees and litigation costs, including expert witness fees, which she has incurred in litigating her claims, in addition to backpay, compensatory damages, pre- and post-judgment interest, punitive damages, and all other relief available under the statutes.

45.    Plaintiff further seeks an equitable declaration of the Court, as authorized by the FEHA and the common law that the Defendant engaged in discriminatory acts and seeks injunctive relief against Defendant and its unlawful practices.

## Second Cause of Action

### [California Labor Code § 1102.5 – Whistleblower Retaliation]

46.    Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

47.    Plaintiff engaged in protected activity when reported to her supervisors and above regarding the inaccessibility of the TFA website.  This inaccessibility violated state and federal laws, including the Fair Employment and Housing Act, the Unruh Civil Rights Act, and the

Americans with Disabilities Act, because it prevents disabled job applicants from accessing information about TFA.

48. Plaintiff was subjected to an adverse employment action when she was terminated.

49. Plaintiff's protected activities are causally linked to the adverse action at issue, as evidenced by the temporal proximity between her disclosures of unlawful activity and her termination.

50. Defendant's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

51. Plaintiff is entitled to backpay, interest, reinstatement, compensatory damages (*see, e.g.,* Cal. Lab. Code §1105), attorneys' fees and litigation costs, declaratory and injunctive relief, punitive damages, and all other penalties and relief available for a violation of California Labor Code section 1102.5.

### Third Cause of Action

### [Wrongful Termination in Violation of Public Policy]

52. Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

53. Defendant was Plaintiff's employer.

54. Plaintiff's termination was in violation of the fundamental public policy of the State of California as put forward in FEHA, Labor Code section 1102.5, and the Unruh Civil Rights Act, as well as the fundamental public policy of the United States as put forward in the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964. *See Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980); *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 666 (1988).

55. Defendant terminated Plaintiff on account of her opposition to activity made unlawful under FEHA.

*Wirth v. Teach for America, Inc.*                    COMPLAINT - 9

56.     Defendant's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

57.     As a result of Defendant's actions, Plaintiff sustained economic damages to be proven at trial, in addition to punitive damages.  As a further result of Defendant's actions, Plaintiff suffered emotional distress, resulting in damages to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

1. That this Court award actual, compensatory, and liquidated damages to Plaintiff for violations of her civil rights and labor code rights under state law.

2. That this Court award injunctive and/or declaratory relief to Plaintiff pursuant to applicable state law.

3. That this Court award Plaintiff's reasonable attorneys' fees and costs pursuant to state law, including but not limited to California Code of Civil Procedure section 1021.5.

4. That Plaintiff be awarded pre-judgment interest on all monies awarded;

5. That Plaintiff be granted all other relief as the Court may deem just and proper.

Dated:  October 31, 2017                    CAMPINS BENHAM-BAKER


                                             By     Julia Campins
                                                    *Attorneys for Plaintiff*

## JURY TRIAL DEMANDED

Plaintiff, LISANNE WIRTH, hereby demands a trial by jury.


Dated:  October 31, 2017                    CAMPINS BENHAM-BAKER


                                             By     Julia Campins
                                                    *Attorneys for Plaintiff*

*Wirth v. Teach for America, Inc.*                  COMPLAINT - 10